UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

  Plaintiff(s),

v.

Walter Priest,

  Defendant(s).
_____/

Case No. 10-20197

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS [11] AND FOR DISCOVERY [12]**

This matter comes before the Court on Defendant's Motions to Dismiss [11] and for Discovery [12]. For the reasons set forth below, Defendant's Motion to Dismiss is DENIED and Defendant's Motion for Discovery is DENIED AS MOOT.

**I. Facts**

A grand jury indicted Defendant Walter L. Priest ("Defendant") on April 20, 2010, for knowingly possessing a firearm on which the manufacturer's serial number had been removed, altered, and obliterated. (Docket Text #1.)  Defendant is a Federal Firearms Licensee ("FFL"). (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.)  As an FFL, he is licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to sell firearms under specified conditions and limitations. (*Id.*)  The facts underlying the indictment began on July 4, 2008, when Defendant sold a Remington Arm .308 caliber rifle, Model Number 700 (the "Firearm") to David Hadley ("Hadley") at Defendant's business, Gun Outfitters, Inc., in Adrian, Michigan. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2, 3; Def.'s Mot. to Dismiss at 2.)

After the sale, Hadley took the Firearm to a different FFL to have that FFL mount a scope on the Firearm. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2; Def.'s Mot. to Dismiss at 2.) In the course of examining the Firearm, the second FFL discovered that the Firearm was missing some of the manufacturer's serial number digits. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2; Def.'s Mot. to Dismiss at 2.) On July 17, 2008, the second FFL took the rifle to the Bath Township Police Department because he believed that the serial number had been altered. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2; Def.'s Mot. to Dismiss at 2.)

A few days later, Bath Township Police Department detectives began an investigation into the Firearm's altered serial numbers. (Pl.'s Mot. to Dismiss at 2.) The detectives contacted Hadley about the Firearm. (*Id.*) Hadley requested the Firearm's return; the detectives rejected his request. (*Id.*) Hadley then contacted Defendant to request help in the form of a copy of the original Firearm's sales receipt. (Def.'s Mot. to Dismiss at 2.) Hadley also told Defendant that the Bath Township Police Department was holding the Firearm because of a serial number issue. (*Id.*) On July 25, 2008, Hadley faxed to a Bath Township detective paperwork that showed he purchased the Firearm from Defendant's business. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2-3.) The paperwork listed a complete serial number for the Firearm. (*Id.* at 3.) Hadley told the detective that he was unable to read the serial number when he initially purchased the Firearm. (*Id.*) Hadley also informed the detective that the Firearm had a second serial number, crookedly stamped on, that appeared that the manufacturer had not put there. (*Id.*)

On July 25, 2008, Defendant called the ATF Firearm Technology Branch concerning the firearm and spoke with an agent with whom he had previous contact. (Def.'s

Mot. to Dismiss at 2-3.) Either on July 25, 2008, or around that day, ATF Special Agent Crockett ("Crockett") became involved. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 3; Def.'s Mot. to Dismiss at 2-3.) The Government claims that Crockett spoke with Defendant multiple times on July 25, 2008. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.) During these conversations, the Government claims that Defendant admitted he placed serial numbers on the Firearm. (*Id.*) Defendant's explanation, the Government claims, was that the serial number became damaged when the Firearm fell off a table. (*Id.*) Defendant, therefore, contacted the Firearm manufacturer to get the serial number and subsequently 're-stamped' the Firearm. (*Id.*) During these conversations, the Government claims that Defendant admitted "accidentally" selling the Firearm at a gun show. (*Id.*)

Crockett eventually took possession of the Firearm and either transmitted it to the Michigan State Police or conferred with the Michigan State Police to determine that a fall from a table could not damage a serial number. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 3; Def.'s Mot. to Dismiss at 3.) A serial number trace subsequently revealed that the Firearm serial number was invalid. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.)

Defendant's vindictive prosecution claim arises from the Firearm matter. This claim has its roots in Defendant's interactions with the Michigan-based militia group, the Hutaree.

On February 5, 2009, the Government searched Defendant's house pursuant to a search warrant based upon information received from Defendant's son, Walter Jason Priest ("Jason") and items located at Jason's residence that may have come from

3

Defendant's house. (*Id.*)[1] Two weeks after the search, around February 23, 2009, Crockett reinitiated a trace on the Firearm. (Def.'s Mot. to Dismiss at 4.) A few days later, on February 27, 2009, Defendant met with the Government to discuss his firearms business, the Firearm, and Defendant's knowledge of the Hutaree. (Pl.'s Resp. at 4; Def.'s Mot. to Dismiss at 4.)

Defendant believes that his indictment is a direct result of prosecutorial vindictiveness because of his firearms sales to the Hutaree. (*Id.* at 4.)[2] Defendant offers several news articles that appear to link him to the Hutaree. (Def.'s Mot. to Dismiss at 5.) In an AnnArbor.com report from April 2, 2010, ATF Special Agent Donald Dawkins ("Dawkins") stated that the ATF was investigating Defendant, although he declined to offer any details. (*Id.*, Ex. A at 1.) The article mentions that the Hutaree was upset when the ATF conducted a gun records check on Defendant in 2008 and that Defendant had previously sold gun parts and items to Hutaree leader David Brian Stone ("Stone"). (*Id.*, Ex. A at 1,2) Although the article specifically states that Dawkins did not believe that Defendant was a member of the Hutaree, the article does state that there may be a

---

[1]On January 22, 2009, the Adrian City Police Department arrested Defendant's son, Walter Jason Priest ("Jason"). (Def.'s Mot. to Dismiss at 3; Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.) The Adrian City Police arrested Jason. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 4.) Jason ultimately plead guilty to being a felon in possession of a firearm. (*Id.*) The firearm for which he plead guilty, the Defendant had previously owned or possessed. (*Id.*) One of the firearms found during Jason's arrest was a gun Defendant gave to Jason's girlfriend. (*Id.*) Further investigation of the January 22, 2009, incident revealed that Jason had worked with Defendant at various gun shows. (*Id.*)

[2]On March 23, 2010, several members of Hutaree were indicted in the case *United States v. David Brian Stone, et. al.*, No. 10-20123 (E.D. Mich. filed March 29, 2010). (*See* Docket Text #4 of that case.) Defendant was not named in that indictment. (Pl.'s Resp. at 4.)

potential link between Defendant and Hutaree leader Stone. (*Id.*, Ex. A at 2.) In the article, Defendant states that he was unaware of a Hutaree offer to break his son out of jail, which federal prosecutors referred to in a court hearing. (*Id.* Ex. A at 2.) A *Detroit News* article dated April 10, 2010, states that Stone and his son (also a Hutaree member) visited Defendant in jail and offered to break Defendant's son, Jason, out of Wayne County Jail. (*Id.*, Ex. B at 1.) Although the *Detroit News* article does make explicit that the FBI investigation of the Hutaree and the ATF investigation of Defendant and his son were "independent of each other," it also states that the investigations "crossed paths" in Adrian, Michigan. (*Id.* Ex. B at 1.) Defendant also offers an April 24, 2010, *Newsweek* story that discussed the relationship between Defendant and Hutaree members. (*Id.*, Ex. C at 1.) Specifically the article mentions information from an unnamed federal law-enforcement official who stated that Defendant "knew" Hutaree members and made legal sales of firearms to Hutaree members. (*Id.*, Ex. C at 1.)

**II.     Analysis**

    **A. Vindictive Prosecution**

Defendant argues that he was vindictively prosecuted based on his firearms sales to Hutaree members. The substance of his claim is that he suffered an unreasonable delay in being prosecuted and that the prosecution was revived only after several articles were published that linked his firearms sales with Hutaree members. Because the timing and articles do not establish a sufficient basis for a vindictive prosecution claim, and no other argument that Defendant makes supports such a claim, this Court denies his motion and his request for an evidentiary hearing.

There are two means by which a defendant can prove prosecutorial vindictiveness. A defendant can establish "actual vindictiveness" by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or Defendant can establish a "realistic likelihood of vindictiveness," through the proof of the following factors:

> (1) exercise of a protected right; (2) the prosecutor's "stake" in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably (4) that the prosecution was initiated with the intent to punish the [defendant] for the exercise of the protected right. Thus, a person claiming to be vindictively prosecuted, must show that the prosecutor had some "stake" in deterring the [defendant's] exercise of his right, and that the prosecutor's conduct was somehow unreasonable.

*United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (internal quotations and citations omitted). If a court finds a "reasonable likelihood of vindictiveness," then the government must disprove or justify the challenged action. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) *cert. den.* 534 U.S. 980 (2001). The standard a district court must apply in reviewing the circumstances surrounding a vindictive prosecution claim is "an objective one–whether a reasonable person would think there existed a realistic likelihood of vindictiveness." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). "The proper standard does not depend on a defendant's subjective impressions." *Id.*

### 1. Defendant Did Not Prove Actual Vindictiveness

Defendant does not allege actual vindictiveness in his motion, but even if he did, his allegation would fail. Actual vindictiveness requires "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Dupree*, 323 F.3d at 489. Stated another way, the defendant must show that

> (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charge by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus.

*United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000), *cert. den.* 511 U.S. 1015 (2000) (internal quotations and citations omitted). In *United States v. Jarrett*, 447 F.3d 520, 522 (7th Cir. 2006), the defendant, Jarrett, argued that the government indicted him only after he succeeded in getting state murder charges dismissed against a client who was the target of a highly publicized, joint federal-state investigation. The district court found that Jarrett was vindictively prosecuted. *Id*. The Seventh Circuit disagreed. *Id*. at 527. The Seventh Circuit noted that Jarrett did not "produce[] any public or private statement by a prosecutor manifesting animus toward him; any document that might establish bad motives on the part of the government; or any similar 'smoking gun.'" *Id*. Jarrett, the court continued, could not sustain a prosecutorial vindictiveness claim "on examples of suspicious timing, speculation about the government's motives, and allegations that the U.S. Attorney's office failed to follow its internal procedures in pursuing his indictment." *Id*. The Seventh Circuit also explicitly stated that a district court could not rely on the "cumulative weight" of the facts, absent clear and objective evidence, since "the standard for vindictive prosecution is so rigorous." *Id*.

Here, Defendant has not offered any "objective evidence" that the prosecutor was acting to punish him. Nor has Defendant offered any evidence of prosecutorial animus. Defendant has offered a series of gun sales and events connecting him to the Hutaree and three news articles in support of his vindictive prosecution claim. (Def.'s Mot. to Dismiss, Exs. A, B, C.) Neither these events nor the three news articles show objective evidence

7

of prosecutorial punishment or animus. If Defendant were to succeed on a claim of vindictive prosecution, he would have to prove a realistic likelihood of vindictiveness.

### 2. Defendant Did Not Prove A Realistic Likelihood of Vindictiveness

Defendant alleges that a "reasonable likelihood of vindictiveness" exists in the prosecutor's filing charges against him. To prove this claim, Defendant needs to establish a "realistic likelihood of vindictiveness," through the proof of the following factors:

> (1) exercise of a protected right; (2) the prosecutor's "stake" in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably (4) that the prosecution was initiated with the intent to punish the [defendant] for the exercise of the protected right. Thus, a person claiming to be vindictively prosecuted, must show that the prosecutor had some "stake" in deterring the [defendant's] exercise of his right, and that the prosecutor's conduct was somehow unreasonable.

*United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (internal quotations and citations omitted). If the Court finds Defendant has shown a "reasonable likelihood of vindictiveness," then the government must disprove or justify the challenged action. *Bragan,* 249 F.3d at 481.

#### a. Exercise of a Protected Right

Defendant contends that he was vindictively prosecuted for exercising his Second Amendment right to keep and bear arms. This argument fails. The Second Amendment right to keep and bear arms is not unlimited. *District of Columbia v. Heller*, __ U.S. __; 128 S.Ct. 2783, 2798 (2008). 18 U.S.C. § 922(k) limits Defendant's right to keep and bear arms by criminalizing the possession of a firearm with an obliterated or altered serial number. That section provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or

8

> manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

This statute recently survived a challenge to its constitutionality in the Third Circuit. *United States v. Marzzarella*, __ F.3d __; 2010 WL 1947233, at *1 (3d. Cir. July 29, 2010). In *Marzzarella*, the defendant argued that 18 U.S.C. § 922(k) "impermissibly burden[ed his] Second Amendment rights" and that he had a constitutional right to possess an unmarked firearm in his home. *Marzzarella*, 2010 WL 1947233, at *1. The Third Circuit disagreed. *Id*. It found that the Second Amendment's protection "does not extend to all types of weapons, only to those typically possessed by law-abiding citizens for lawful purposes." *Id*. (Internal citation omitted.) The Third Circuit reasoned that 18 U.S.C. § 922(k) would pass the strictest constitutional test: the statute is narrowly tailored–affecting only weapons that "have been made less susceptible to tracing", and the statute serves a compelling state interest–the government's "interest in enabling law enforcement to gather vital information from recovered firearms." *Id*. at *10-11.

This Court has reviewed the Third Circuit's opinion and agrees with its holding–there is no protected right to possess a firearm with an obliterated or altered serial number. Here, then, Defendant's claim of vindictive prosecution must fail because he has not established a protected right.

### b. The Prosecutor's "Stake"

Even if Defendant were able to establish a protected right, his claim would still fail because he is not able to establish that the prosecutor had a stake in Defendant's right.

9

The Sixth Circuit has found instances in which a prosecutor had a stake in the exercise of a protected right, but these instances are not similar to Defendant's situation.

In *Bragan*, *supra,* the court found that the petitioner had presented "sufficient evidence" of a realistic likelihood of prosecutorial vindictiveness in the petitioner's assertion of his First Amendment rights. 249 F.3d at 482-83, 484. The court found that petitioner put forth enough evidence that the prosecutors had a stake in inhibiting his freedom of speech and that the prosecutors' conduct was unreasonable. *Id.* at 483-84. There, the petitioner made highly critical statements about the prosecutors in public statements via print, radio, and television media, in a published book, and at speaking engagements. *Id.* at 483. The statements, at times, contained serious allegations against the prosecutors, and took place during a period in which the prosecutors were facing a disciplinary charge based on their conduct during the petitioner's original trial. *Id.* The prosecutors' motion to gag the petitioner, therefore, indicated that the prosecutors were aware of the petitioner's statements and suggested that the prosecutors had a stake in preventing the petitioner's exercise of his First Amendment rights. *Id.*

Here, Defendant has not shown, nor is he likely to show, that the prosecution had any stake in Defendant's Second Amendment right. As stated above, he has no right to possess the Firearm. He also has provided no improper motive in the prosecution's indicting him on possession of the Firearm. Defendant claims that he was indicted because of his firearms sales to the Hutaree, but his indictment is independently based upon his alleged violation of 18 U.S.C. § 922(k), a statute unrelated to the sale of firearms to a militia group. Defendant therefore fails to establish the second factor of vindictive prosecution.

### c. Unreasonable Prosecutorial Conduct

Defendant also suggests that he suffered an unreasonable delay before he was indicted. Defendant's argument is not persuasive. The Sixth Circuit has held that "dismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage." *Wolfe v. Bock*, No. 06-1399, 253 Fed.Appx. 526, 2007 WL 3227551 (6th Cir. Nov. 1, 2007) citing *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (internal quotations omitted) (alternations in original). "[W]here the delay is investigative rather than intended to gain a tactical advantage over the accused, pre-indictment delay does not offend the Fifth Amendment. *Brown*, 959 F.2d at 66. The Sixth Circuit has upheld delays of eleven months, twenty-nine months, thirty-three months, five years, and fifteen years. *Id.* at 67.

In *Bragan*, the court found that the prosecutors' conduct in reinstating charges was unreasonable when, among other factors, the prosecutors reinstated the charges almost one year after the district court's order requiring reinstatement of the charges within sixty days. *Bragan,* 249 F.3d at 483. That court found prosecutorial unreasonableness in reinstating charges and violating a court order's time limitation. Here, Defendant is facing an initial indictment and the indictment violated no court order. The Defendant has offered no evidence that the less than twenty-four month delay (from the initial possession of the Firearm on July 4, 2008, to the April 20, 2010 indictment) has prejudiced him in his right to a fair trial. Nor has Defendant offered any evidence that the delay was intentional or to

gain a tactical advantage. Defendant therefore cannot claim that the investigation and ultimate indictment is unreasonable enough to support a vindictive prosecution claim.

### d. Prosecutorial Intent to Punish

Defendant claims he is being punished for his legal sale of firearms to the Hutaree. With this factor, again, Sixth Circuit precedent requires that a defendant establish a prosecutorial intent to punish. In *United States v. Adams*, 870 F.2d 1140, 1145-46 (6th Cir. 1989), the court found that there may have been a likelihood of vindictiveness based on a prosecutorial intent to punish the defendant. There, the court found that the defendant's evidence presented a suspicious reasoning behind the prosecutor's action. *Id.* The court noted that it could not recollect an instance in which a taxpayer who voluntarily amended her return and paid the deficiency had been prosecuted. *Id.* at 1145. Nor could the court remember a time when a person had been prosecuted for perjury for testimony given in a civil proceeding. *Id.* at 1145-46. The court noted, in addition, that the defendant presented several affidavits that stated that the prosecution against the defendant was for "revenge" for the defendant's filing of a sex discrimination suit against the United States Equal Employment Opportunity Commission, and that, under such circumstances as presented in the case, prosecution would not have normally been instituted. *Id.* at 1141, 1146. These affidavits, the court held, raised the question of "why [the] particular prosecution was undertaken." *Id.*

In *United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000), *cert. den.* 511 U.S. 1015 (2000), the defendants presented an argument similar to the one Defendant puts forth. There, the defendants alleged that they were subjected to vindictive prosecution due to the

publication of a newspaper article accusing government agencies of concealing evidence, the publication of a book probing the government's conduct, and one of the defendants' Freedom of Information Act requests regarding U.S. Attorneys and FBI agents. *Id.* at 718. The court held "[t]he fact that an aggressive investigation commenced immediately following publication of the newspaper article provides no evidence of such vindictiveness[.]" *Id.* at 719. The court further stated that "[t]he article clearly indicated a potential [statutory violation], so the government's decision to investigate cannot give rise to an inference of impropriety." *Id.* The published article, then, gave rise to no inference that the prosecution was anything more than subsequent steps in the investigation. *Id.*

Unlike *Adams*, the link between Defendant's allegation and his indictment is not strong or suspicious enough to support a claim for vindictive prosecution. Defendant believes he was prosecuted for his involvement with the Hutaree. But his indictment is for possession of a firearm on which the serial number has been altered or obliterated. There is no connection. Similar to *Sanders*, the fact that there were articles published that imply a connection between Defendant and the Hutaree is not enough to support a claim based on an intent to punish Defendant. As in *Sanders*, there appears to be a violation of a statute, here, 18 U.S.C. § 922(k), and that, standing alone, is sufficient to prosecute Defendant.

Because Defendants has failed to established either actual vindictiveness or a reasonable likelihood of prosecutorial vindictiveness, his claim must fail.

### B. Defendant's Discovery Motion

This matter also comes before the Court on Defendant's Motion for Discovery. The Government has responded that it has complied with Defendant's discovery requests and will continue to do so. (Pl.'s Resp. to Def.'s Mot. for Disc. at 3.) The Government, in addition, has stated that it recognizes its continuing duty to supply discovery and, if it has not supplied Defendant with the requested documents, such documents are not available. (*Id.*) Defendant disputes the Government's assertion. (Def.'s Reply to Pl.'s Resp. at 1.) Specifically, Defendant believes the Government has failed to provide the following discovery:

- A forensic examination report from the Michigan State Police generated as a result of the request made by the Bath Township Police Department.

- A firearm trace from August 21, 2008, conducted by Agent Crockett. Defendant states that the Government has only provided firearm traces from February, 2009.

- Files concerning Defendant's FFL licensee status. Defendant believes these files contain records of contacts between him and various ATF agents. He believes these records will reveal whether the ATF conducted "inspections" on his business in October and December, 2008.

- Handwritten notes of a February 27, 2009 interview between Defendant and ATF. Defendant believes that the Government-provided typed notes of the February 27, 2009 interview do not reflect all the topics discussed during Defendant's interview. Specifically, Defendant believes that the parties discussed the Firearm, and that the Government's typed notes do not reflect

that discussion. Defendant also requests all handwritten notes of contacts by ATF representatives pertaining to Defendant.

Because the Government has stated that it will promptly provide any additional information that it has, this Court denies as moot Defendant's Motion for Discovery.

**III. Conclusion**

For the reasons set forth above, this Court DENIES Defendant's Motion to Dismiss and DENIES AS MOOT Defendant's Motion for Discovery.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: September 16, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 16, 2010, by electronic and/or ordinary mail.

                s/Carol A. Hemeyer
                Case Manager